UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

DARRELL J. NEWTON,                                    Case no. 21-10075-t13

    Debtor.

DARRELL J. NEWTON,

    Plaintiff,

v.                                                                Adv. no. 21-1016-t

JOSEPHINE M. BAGLIO and
TRIAD NATIONAL SECURITY, LLC,

    Defendants.

## OPINION

Plaintiff Darrell Newton and Defendant Josephine Baglio agreed to the entry of a final decree dissolving their marriage. The decree, which apportioned their community property, included an equal division of Newton's pension plan. The decree also required Newton to make "equalization payments" to Baglio, pay certain community debts, and turn over to Baglio certain vehicles and other personal property. Newton made the first equalization payment. Thereafter, he defaulted in a number of material respects. After repeated attempts to get Newton to pay as agreed, in late 2020 the divorce court entered a money judgment against Newton and ordered that Newton's right to receive half the pension plan payments be assigned to Baglio, thereby increasing her interest in the plan to 100%.

Newton filed this case in January 2021 and brought this adversary proceeding against Baglio, seeking to avoid the assignment of his half of the pension plan. Newton alleges that the assignment is an avoidable preferential transfer or, alternately, is a judgment lien that impairs an

exemption. Before the Court is Baglio's motion for summary judgment on those theories. The Court concludes that, with one exception, Baglio's motion should be denied.

A. Facts.[1]

The Court finds that the following facts are not in genuine dispute:

Newton and Baglio were married on March 9, 1996. Baglio filed for divorce on March 24, 2017, in the Second Judicial District Court, State of New Mexico. On February 6, 2018, the state court entered a Stipulated Final Decree of Dissolution of Marriage.

Paragraph 2 of the final decree divides the parties' community property. Under paragraph 2(d), Newton is required to pay Baglio $20,463.00 "as and for an equalization of the division of the community estate, and to satisfy any claims [Baglio] may have for past interim support. . . ."

Under paragraph 2(e) of the final decree, the right to receive payments under Newton's pension plan was divided equally.

Paragraph 4 of the final decree provides:

[B]ased on the length of this marriage and pursuant to New Mexico Statute the Court specifically reserves jurisdiction over the issue of spousal support. However, at this time no spousal support shall be paid by either party.[2]

Paragraph 9(L) of the final decree, captioned "Bankruptcy Protection," provides:

[T]he parties agree that each of their obligations, rights, duties and responsibilities set forth in this Final Decree, including the transfer of property and assumption of debt, shall not be discharged in bankruptcy. Should any party attempt to discharge in bankruptcy any of their duties, rights, responsibilities and obligations, including the obligation to pay or assume debt, said bankruptcy shall not effect that parties' obligations nor the other parties' right to receive the benefit of those obligations, and same shall not be discharged in bankruptcy. Each of the parties' duties and obligations set forth herein shall be non-dischargeable in bankruptcy and furthermore, shall be in the nature of support. Each party shall release and

---

[1] The Court takes judicial notice of its docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).
[2] *See* NMSA § 40-4-7(F).

indemnify the other, including payment of all of their attorney fees and costs, incurred to prevent the other from discharging any obligation in a bankruptcy proceeding. Any loss incurred by either party as a result of the others attempt to discharge a duty or obligation in bankruptcy shall be recovered in the form of spousal support and the Court reserves jurisdiction to reimburse a party from any loss by an award of spousal support.

On February 16, 2018, Newton paid Baglio $10,000, the first required installment of the equalization payment. The balance ($10,463) was due before July 1, 2018. The parties had contemplated that Newton would be able to make the payment when he refinanced their house, which he received (subject to a mortgage) under the final decree.

The same day that Newton made the first equalization payment, he was fired from his long-term job for absenteeism and drunkenness.[3] After losing his job, Newton defaulted under the final decree by failing to make the second equalization payment; damaging two vehicles Baglio was to receive under the decree; failing to pay assumed credit card debt; failing to make mortgage payments; failing to cooperate in assigning half of his pension plan to Baglio; and charging attorney fees on Baglio's personal credit card.

On March 15, 2018, Baglio filed a motion to enforce the final decree. The motion resulted in several orders, all designed to get Newton to comply with the decree. An order entered on July 18, 2018, was a Qualified Domestic Relations Order ("QDRO"), which assigned to Baglio 50% of Newton's pension, per the final decree. Another order entered that day directed Special Master Zenon Myszkowski[4] to investigate and make recommendations to the Court regarding Newton's defaults under the final decree.

Myszkowski filed his report and recommendation on November 12, 2018, recommending that the state court find that Newton owed Baglio:

---

[3] Newton admits he is an alcoholic.
[4] The final decree appoints Myszkowski to act as a special master in the event of disputes arising under the decree.

| Unpaid equalization payment | $10,465.00 |
|---|---|
| Unpaid mortgage payments | $8,385.24 |
| Reimbursement for house repairs | $2,172.00 |
| Credit card charges | $4,701.19 |
| Cost to clean RV | $3,770 |
| Total | $29,493.43 |

On December 4, 2018, the state court entered an order adopting Myszkowski's recommendations. The order stated: "The Recommendations stated [in Myszkowski's report] are now enforceable and may result in the entry of a judgment."

Newton still did not pay Baglio. On August 20, 2019, Baglio filed a motion for order to show cause, asking that the state court enforce its December 4, 2018, order. Newton did not respond. On June 16, 2020, Baglio filed an application for default judgment, seeking, inter alia, the following relief:

> Order collection of the amount owed to Petitioner by amending the previously issued Qualified Domestic Relation Order (QDRO) for the LANS defined pension plan to grant Petitioner the right to receive 100% of the pension plan which would cover the percentage of the plan previously granted to Petitioner plus cover the unpaid $29,493.43 plus statutory pre and post judgment interest owed to her.

Once again, Newton did not respond. The state court entered a default judgment on September 2, 2020 (the "Default Judgment"), which included a money judgment against Newton for $29,493.42 ("the Judgment Amount"), plus $2,250 in attorney fees. The judgment awarded interest at 8.75% on the Judgment Amount. Paragraph 11 of the Default Judgment ordered:

> Collection of the total judgment amount entered herein in the amount of $29,493.43 plus any post judgment interest that accrued shall occur by amending the previously issued Qualified Domestic Relations Order (QDRO) for the LANS defined pension plan to grant Petitioner the right to receive $29,493.42 plus $2,250 in attorney's fees and costs incurred in enforcing the *Order Adopting Special Master's Recommendations* plus any interest that has accrued between entry of this judgment and entry of the QDRO.

On November 3, 2020, the state court entered an amended QDRO, identical in form to the original QDRO except that Baglio's share of the pension plan was increased from 50% to 100%

(hereafter, the "Assignment"). The amended QDRO is inconsistent with paragraph 11 of the Default Judgment.[5]

The pension plan currently is paying $1,229.76 a month to Baglio, which includes Newton's former half share ($614.88). The payments started February 1, 2021.

Newton filed this chapter 13 case on January 28, 2021. In this adversary proceeding he seeks to avoid the Assignment as either a preferential transfer or a judicial lien that impairs an exemption. In her motion for summary judgment, Baglio argues that the Judgment Amount is a DSO, which may create a defense to the preference claim. *See* § 547(c)(7) (a transfer is not avoidable to the extent it was a bona fide payment of a DSO). Similarly, Baglio argues that, if the amended QDRO created a judgment lien (which she disputes), it secures payment of a DSO and therefore cannot be avoided. *See* § 522(f)(1)(A) (a judicial lien that secures a DSO cannot be avoided).

B.  <u>Summary Judgment</u>.

Motions for summary judgement are governed by Fed. R. Civ. P. ("Rule") 56, made applicable by Fed. R. Bankr. P. 7056. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Rule 56(c).

---

[5] There are other anomalies or ambiguities in the Default Judgment. Paragraph 11 states that the assignment of Newton's interest in the pension plan only "collects" interest that accrued between September 2, 2020, and November 3, 2020. This likely is a drafting error. Use of the past tense "that has accrued" in paragraph 11 is confusing, as no interest had accrued when the Default Judgment was entered. Paragraph 11 uses the phrase "total judgment amount entered herein in the amount of $29,493.43," which is confusing. It appears the term "total judgment" was taken from paragraph 9, but in that paragraph the term was crossed out. Finally, The phrase "entry of the QDRO" at the end of paragraph 11 must mean the amended QDRO, not the original QDRO.

The "party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion and identifying [the portions of the record that] demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "If the court does not grant all the relief requested by [a motion for summary judgment], it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case." Rule 56(g). Whether to grant a request to deem facts as established under Rule 56(g) is within the court's discretion. *See In re Lane*, 2021 WL 3438347, at *11 (Bankr. D.N.M.), citing 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2737 (4th ed.).

C.  The Proper Characterization of Newton's Debt to Baglio.

The pleadings and Baglio's summary judgment motion raise two main issues. The first is whether Newton's debt to Baglio is a domestic support obligation (DSO) or a property settlement obligation.

Section 101(14A)[6] defines a domestic support obligation as

> [A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provisions of this title, that is—
>     (A) owed to or recoverable by—
>         (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>         (ii) a governmental unit;
>     (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>     (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>         (i) a separation agreement, divorce decree, or property settlement agreement;
>         (ii) an order of a court of record; or

---

[6] Unless otherwise specified, statutory references are to 11 U.S.C.

> > (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

The Bankruptcy Code favors DSOs. They are nondischargeable, even in chapter 13. *See* §§ 523(a)(5) and 1328(a)(2). Payments on account of DSOs are not recoverable as preferential transfers. § 547(c)(7). Judgment liens securing DSOs are not avoidable even if they impair a debtor's exemption. § 522(f)(1)(A). Finally, DSOs are given a first priority in § 507. *See* § 507(a)(1)(A).

Property settlement obligations are significantly less favored. Property settlement debts are dischargeable in chapter 13. *See* §§ 523(a)(15) and 1328(a)(2). Transfers to pay property settlement debts can be avoided under § 547. Judgment liens securing property settlement obligations can be avoided under § 522(f). Finally, property settlement obligations do not have priority status under § 507.

Because of the disparate treatment of DSOs and property settlement debts, it is important to determine the category into which Newton's debt to Baglio falls.

Whether a debt is a support obligation "is fact specific and must be decided on a case by case basis." *In re Redfearn*, 608 B.R. 556, 561 (Bankr. D.N.M. 2019) (citing *In re Bristow*, 2005 WL 1321996, at *3 (Bankr. M.D.N.C.); *In re Okrepka*, 533 B.R. at 334 (inquiry must be made on a case-by case basis); *In re Waller*, 525 B.R. 473, 479-80 (Bankr. D. Kan. 2014) (same); *In re Skaggs*, 2003 WL 23838133, *3 (Bankr. D. Kan.) (same)).

In the 10th Circuit, courts use the "dual inquiry" test to analyze whether a debt qualifies as a domestic support obligation. The test looks at both the parties' intent and the substance of the obligation. "[T]he critical inquiry is the shared intent of the parties at the time the obligation arose."

*In re Redfearn*, 608 B.R. at 562, citing *In re Sampson*, 997 F.2d 717, 723 (10th Cir. 1993), citing *Tilley v. Jessee*, 789 F.2d 1074, 1078 (4th Cir. 1986). When determining the intent of the parties, written agreements are persuasive but not dispositive. *See Sampson*, 997 F.2d at 722-23. For example, "even an obligation designated as a property settlement may be related to support." *In re Gianakas*, 917 F.2d 759, 763 (3d Cr. 1990).

1. <u>Intent</u>. The parties, relying on the final decree, disagree about their intent. Baglio relies almost exclusively on paragraph 9(L) of the decree, quoted above. Newton, on the other hand, points to paragraph four of the decree, which provides that "no spousal support shall be paid by either party." Furthermore, all of Newton's obligations to Baglio arise under paragraphs 2 and 3, which divide community assets and debts. The Court concludes that there is a genuine fact issue on the parties' intent. Because written agreements do not control whether a debt is a DSO, the final decree cannot answer the question. Furthermore, boilerplate waivers of bankruptcy protection, such as the waiver found in paragraph 9(L), are void as contrary to public policy. *See, e.g., In re Madison*, 184 B.R. 686, 690 (Bankr. E.D. Pa. 1995) (prepetition agreement to waive bankruptcy protections violates public policy and is unenforceable).

2. <u>Substance of the Obligation</u>. When determining the substance of an obligation, courts analyze "the function served by the obligation at the time of the divorce." [I]f an obligation effectively functions as the former spouse's source of income at the time of the divorce, it is in substance, a support obligation." *Redfearn*, 608 B.R. at 563 (citing *Sampson*, 997 F.2d at 725-26) (internal citations omitted).

Newton's debt arises out of the final decree paragraphs dividing the parties' community assets and debts. It includes the unpaid equalization payment, mortgage payment obligations; home and RV cleaning and repair reimbursements; and credit card charges. Tacked onto these

debts are attorney fees and interest. Although the debts appear to be in the nature of property settlement obligations, the Court must determine whether the parties intended any of the payments to support Baglio after the divorce. The parties dispute Baglio's employment status and monthly income. They will need to present evidence to show whether some or all of the debt was intended as support for Baglio.

In addition, even if the debt is a DSO, there is a genuine issue whether the Assignment was a "bona fide payment" of a DSO or simply a collection mechanism (see below).

D.  The Correct Interpretation of the Assignment.

The second major issue raised by the pleadings and the summary judgment motion is the proper characterization or interpretation of the Assignment: did it pay Newton's debt to Baglio? If not, was the Assignment temporary or conditional? Is the Assignment in the nature of a judgment lien? A security interest? A wage garnishment?

Paragraph 11 of the Default Judgment is inconsistent with the amended QDRO and has drafting errors. Nevertheless, the fact that the Assignment did not extinguish Newton's debt to Baglio is not disputed. Rather, it is established by the fact that Newton scheduled Baglio as an unsecured creditor ($31,743.43), while Baglio filed a proof of claim in the main case for $32,789.84. Furthermore, paragraph 11 of the Default Judgment says that *collection* of the Default Judgment Amount "shall occur" by amending the QDRO. The state court clearly intended the Assignment to help Baglio collect what Newton owed her, but not to give her a windfall or punish Newton. The state court naturally was frustrated by Newton's refusal to pay what he owed or to respond to court orders, but there is no indication that the court wanted Newton to pay Baglio *more* than he owed her. The Court will deem it established in this proceeding that Newton's debt to Baglio was not extinguished or paid by the Assignment.

On the other hand, there are genuine issues of fact about the following:

- The exact legal nature of the Assignment. Because Newton still owes Baglio the Judgment Amount, the Assignment seems to be similar to a court-ordered wage garnishment. However, the Court will take evidence and hear arguments of counsel about how best to characterize the Assignment;
- Whether Baglio's collection of the pension plan payments post-petition violates the automatic stay. *See* § 362(a)(3) and § 362(b)(2)B); or
- Enforcement of the Assignment post-petition and/or post-discharge.

## Conclusion

Baglio's motion for summary judgment will be denied for the most part. There is no question that Newton's debt to Baglio survived the entry of the Default Judgment and the Amended QDRO, nor that those state court orders were entered to help Baglio collect Newton's long-unpaid debt. There are genuine issues of material fact, however, about whether the debt is a DSO; whether the Assignment is properly characterized as a garnishment or some other collection device; whether post-petition collection of the pension plan payments violated the automatic stay; how to deal with the Assignment post-petition; and whether the Assignment was a "bona fide payment within the meaning of § 547(c)(7). The Court will order a separate order consistent with this opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: November 24, 2021
Copies to: counsel of record